UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------- X
GEORGIA CHARLTON,

                    Petitioner,

    -against-                              **MEMORANDUM AND ORDER**

ADA PEREZ and ANDREW M. CUOMO,            07-CV-1795 (KAM)
New York Attorney General

                    Respondents.
--------------------------------------- X

**MATSUMOTO, United States District Judge:**

            On April 23, 2007, Georgia Charlton (a.k.a. "Jennifer

Graham") ("petitioner"), acting pro se, filed a petition for a writ

of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  (Doc. No. 1, Charlton

Pet. for Writ of Habeas Corpus ("Pet.").)  Petitioner concurrently

filed a motion to stay the proceedings pending resolution of a motion

for collateral review filed with the New York Supreme Court pursuant

to New York Criminal Procedure Law section 440 ("NYCPL § 440").

(Doc. No. 7, Mot. to Stay Pet. for Writ of Habeas Corpus.)  On August

9, 2007, in response to the court's May 7, 2007 Order, Ada Perez and

Andrew Cuomo ("respondents") filed their opposition to petitioner's

habeas petition.  (Doc. No. 14, Resp't Resp. to Order to Show Cause

("Resp't Resp.").)  Respondents filed a supplemental submission on

---
[1] Although the court received petitioner's application on April 24, 2007, the
"mailbox rule" deems the petition filed as of the date it was given to correctional
authorities for mailing to the court.  See Houston v. Lack, 487 U.S. 266, 270
(1988); Nobel v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001), cert. denied, 534 U.S.
886 (2001).

April 18, 2008, following the New York Supreme Court's denial by Order

dated August 31, 2007 of petitioner's NYCPL § 440 motion (Doc. No.

45, Letter Supplemental Resp. to Habeas Pet. ("Resp't Supp. Resp.")),

and the Appellate Division, Second Judicial Department's denial of

petitioner's request for a certificate of leave to appeal on November

15, 2007.  (Doc. No. 35, People v. Charlton, No. 2007-08841-01 (2d

Dep't Nov. 15, 2007).)  Petitioner responded to respondents'

supplemental submissions on May 29, 2008.  (Doc. No. 51, Pet'r Resp.

to Resp't Letter to Pet. for Writ of Habeas Corpus ("Pet'r Resp.").)

Having considered all of the submissions by petitioner and the

government, the court denies petitioner's habeas petition, for the

reasons stated below.

## BACKGROUND

Petitioner's habeas petition seeks relief from her

conviction, on March 5, 2004, in New York Supreme Court, Kings County,

for assault in the first degree, New York Penal Law § 120.10(1), in

connection with an incident on June 18, 2001, in which petitioner

threw drain cleaner containing sulfuric acid on Mr. Tenlin Lyew ("Mr.

Lyew"), causing Mr. Lyew to suffer third-degree burns to his face

and body, and resulting in the loss of an eye.  Immediately following

the disfigurement of Mr. Lyew, petitioner, a former girlfriend of

Mr. Lyew's who rode with him from Boston to Brooklyn on the night

of the incident, boarded a plane to Jamaica using the alias "Jennifer

2

Graham."

With the assistance of Mr. Lyew's brother, Earnest Lyew, police officers in Jamaica identified petitioner as she deplaned in Kingston, whereupon they arrested her. She was subsequently extradited to the United States but did not immediately face trial because of a determination, pursuant to NYCPL Article 730, that she was incompetent. A subsequent medical evaluation, dated August 21, 2003, however, concluded that:

> in terms of fitness to proceed, the longitudinal examination of [petitioner] within the 24-hour care setting of a forensic psychiatric hospitalization has revealed that [petitioner] indeed does have a factual and rational understanding of the proceedings against her, and can engage in cooperative working relationships with a reasonable degree of rational understanding if so motivated.

(Resp't Ex. N: Resp't Opp. to Def.'s NYCPL § 440 Mot., Ex. A.) On March 15, 2004, following petitioner's trial and subsequent conviction, petitioner was sentenced to seventeen years of imprisonment.

Petitioner appealed her conviction to the New York Appellate Division, Second Department, contending that: (1) she was deprived of a fair trial due to prosecutorial misconduct during summation; (2) she received ineffective assistance of counsel; (3) the Jamaican police lacked probable cause to arrest her; (4) the trial

court's <u>Huntley</u> ruling[2] was erroneous; (5) the jury should have been given special instructions regarding an alleged interested witness; and (6) the court should have read back the entire trial testimony of Mr. Lyew.  (Resp't Ex. N: Resp't Opp. to Def.'s NYCPL § 440 Mot.)

The Appellate Division affirmed petitioner's conviction on March 21, 2006, holding that petitioner's "contention that she was deprived of a fair trial because the prosecutor made improper comments during summation [was] unpreserved for appellate review" because her counsel "either failed to object to the comments, failed to object with specificity, or failed to request further curative instructions or a mistrial after an objection was sustained." <u>People v. Charlton</u>, 27 A.D.3d 658, 658, 812 N.Y.S.2d 595, 596 (2d Dep't 2006) (internal citations omitted).  The Appellate Division nonetheless went on to state:

> In any event, the allegedly improper comments were, for the most part, responsive to arguments and issues raised by the defense counsel, fair comment on the evidence, or related to matters which were fairly inferable from the evidence. To the extent that any remarks were improper, any error was mitigated by the court's charge to the jury, or does not warrant reversal.

<u>Id.</u> at 658-59, 812 N.Y.S.2d at 596 (internal citations omitted).

The Appellate Division further held that petitioner "was not deprived of the effective assistance of counsel" because

---

[2] A hearing held pursuant to <u>People v. Huntley</u>, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965), is used to determine whether a defendant's statements can be used as evidence at trial.

petitioner had "failed to demonstrate the absence of strategic or other legitimate explanations for her counsel's alleged failures in representation," and that petitioner's remaining contentions were simply "without merit."  Id. at 659, 812 N.Y.S.2d at 597.  The Court of Appeals subsequently denied petitioner leave to appeal on June 20, 2006, People v. Charlton, 7 N.Y.3d 753, 853 N.E.2d 250, 819 N.Y.S.2d 879 (2006), and on August 17, 2006, denied petitioner's request for reconsideration, People v. Charlton, 7 N.Y.3d 811, 855 N.E.2d 802, 822 N.Y.S.2d 486 (2006).

On December 15, 2006, four months after the Court of Appeals denied petitioner's motion for reconsideration, petitioner filed a motion to vacate her conviction pursuant to NYCPL § 440. Petitioner's NYCPL § 440 motion raised the following issues: (1) the court erred in deciding petitioner's Huntley motion; (2) the trial jury was improperly charged on the law and the grand jury never received a justification charge; (3) the court excessively questioned witness Daris Ellis and her testimony required an interested witness charge; (4) the fingerprint analysis did not support the evidence; (5) Mr. Lyew's testimony did not establish the element of "serious physical injury"; (6) the court erroneously charged the jury; (7) the court erred in charging two counts of assault in the first degree and that a lesser included offense was never charged; (8) the court's instructions to the jury were improper

and shifted the burden to petitioner; (9) petitioner was deprived of effective assistance of counsel because counsel failed to object when the court allowed a detective to refresh his recollection; (10) there was allegedly no pre-sentence investigation done in aid of sentencing; (11) petitioner's psychiatrists relied solely on information supplied by the People in determining her competence to stand trial and that she was not, in fact, competent to stand trial; (12) that portions of Daris Ellis's testimony regarding an alleged in-court identification of petitioner were erased by the court reporter; (13) that petitioner's statements were involuntary and thus should have been suppressed; (14) the testimony of a witness was unreliable because it was given in exchange for government benefits in the witness's own criminal matter; (15) the trial court erred in not having the entirety of Mr. Lyew's testimony read back at the jury's request; (16) the prosecutor's summation remarks were improper; (17) the indictment was defective because the Grand Jury was not properly charged; and (18) the court's finding of probable cause after conducting a <u>Dunaway</u> hearing[3] was incorrect. (Doc. No. 37, <u>People v. Charlton</u>, No. 5573-01 (N.Y. Sup. Ct. Aug. 31, 2007) ("NYCPL § 440 Mem. & Decision"); <u>see also</u> Doc. No. 14, Aff. of Rhea A. Grob, dated Aug. 9, 2007 ("Grob Aff.") ¶ 15; Resp't. Ex. M: Pet'r Mot. to Vacate, dated Dec. 15, 2006.)

---

[3] A hearing held pursuant to <u>Dunaway v. New York</u>, 442 U.S. 200 (1979), is used to determine whether probable cause existed to arrest a criminal defendant.

The Supreme Court of New York, Kings County, denied petitioner's NYCPL § 440 motion by Memorandum and Order, dated August 31, 2007. (See generally NYCPL § 440 Mem & Decision.) The court began by stating that a number of the claims were "mandatorily barred from review" because they had been raised on direct appeal. Id. at 2 (citing NYCPL § 440.10(2)(a)). The majority of the remaining claims were "also procedurally barred because there was an 'unjustifiable failure to raise such ground or issue upon an appeal actually perfected.'" Id. (quoting NYCPL § 440.10(2)(a)(c)). Nevertheless, the court went on to state that petitioner's procedurally-barred claims lacked merit. Id. at 2-6.

Two of petitioner's claims were not procedurally barred, but were also deemed meritless. Id. at 6-7. First, with regard to the alleged request for an in-court identification of petitioner by Daris Ellis that was "erased" from the record, Justice D'Emic stated that "the witness clearly testified that she did not see the defendant's face" and Ms. Ellis was never asked to identify petitioner in court. Id. at 6. As such, the court dismissed petitioner's allegations that portions of the transcript were erased as "merely bald assertions." Id. at 6-7. Second, regarding petitioner's claim that she was incompetent to stand trial because she "didn't see or hear anyone speaking in pretrial, trial and sentencing proceedings," the court noted that petitioner's attorney

never informed the court that he was unable to communicate with her. Id. at 7. Moreover, the court concluded that petitioner's moving papers indicated that she possessed an extensive memory of the trial proceedings. Id.

Because all of petitioner's NYCPL § 440 claims were either procedurally barred or lacking merit, the court denied petitioner's motion in its entirety. Id. By Order dated November 15, 2007, the Appellate Division, Second Department, denied petitioner's request for a certificate of leave to appeal. (Doc. No. 35, People v. Charlton, No. 2007-08841-01 (2d Dep't Nov. 15, 2007).)

Petitioner raises the following claims in her habeas petition: (1) prosecutorial misconduct during summation; (2) that petitioner's initial detention was improper and petitioner's statement was improperly introduced at trial; (3) failure to read back the complainant's entire testimony in response to a jury request; (4) petitioner's conviction was improperly obtained based on the testimony of Daris Ellis; (5) petitioner was denied the effective assistance of counsel; (6) failure to give a justification charge to the grand jury and the trial jury; (7) denial of due process because petitioner was incompetent to stand trial and because the court did not order a pre-sentence report; (8) an improper jury charge as to the elements of the crimes; and (9) excessive witness questioning by the trial court. (See generally Pet.; see also Doc.

No. 14, Resp't Mem. of Law at 1-2; Grob Aff. ¶ 18.)

Respondents argue that claims (6), (8), and (9) are procedurally barred from habeas review because they are "claims that all appear on the face of the trial record [and] . . . could have been raised on direct appeal, but were not." (Resp't Mem. of Law at 3.) Thus, respondents contend, these claims are neither exhausted, nor judiciable in this habeas petition, because petitioner no longer has a forum in which to raise the claims. (Resp't Mem. of Law at 2-3 (citing NYCPL § 440.10(2)(c)).)

Respondents further note that the remaining claims in petitioner's habeas petition are exhausted because claims (1)-(5) are "on the record claims" that were raised and rejected in her first appeal, and because claim (7) is an "off-the-record" claim that was appropriately raised for the first time and rejected in her NYCPL § 440 motion, and a certificate for leave to appeal was subsequently denied. (Resp't Mem. of Law at 1-3; Resp't Supp. Resp. at 2.) Respondents contend, however, that these exhausted claims are meritless and/or precluded by the independent and adequate state law doctrine, discussed herein.

## DISCUSSION

### I.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), established

a deferential standard that federal courts must apply in reviewing state court decisions on habeas review.   Under AEDPA, a federal court may grant habeas relief with respect to a federal claim adjudicated on the merits in state court only if the adjudication of the claim resulted in a decision that was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d).   In addition, "a determination of a factual issue made by a State court shall be presumed to be correct," and the applicant for habeas relief has the "burden of rebutting the presumption of correctness by clear and convincing evidence."   28 U.S.C. § 2254(e)(1).

Furthermore, a habeas petition shall not be granted unless the petitioner "has exhausted the remedies available in the courts of the State."   28 U.S.C. § 2254(b)(1)(A).   Even if the exhaustion requirement is satisfied, federal habeas corpus review may be barred by the independent and adequate state law grounds doctrine, which provides that a federal court may "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."   Coleman v. Thompson, 501 U.S. 722, 729 (1991).   Because several of petitioner's claims are subject

to denial based on a failure to satisfy the exhaustion requirement and the independent and adequate state law grounds doctrine, the court will address those claims prior to discussing the merits of the remaining claims.

## II.   Procedural Bar to Unexhausted Claims

A section 2254 habeas petition shall not be granted unless the petitioner "has exhausted the remedies available in the courts of the State."   28 U.S.C. § 2254(b)(1)(A); see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); Rosa v. McCray, 396 F.3d 210, 217 (2d Cir. 2005), cert. denied, 546 U.S. 889 (2005); Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995) ("To fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims to the highest court of the pertinent state.") (internal quotation marks and citation omitted).   A habeas petitioner's state remedies are considered exhausted when she has: "(i) presented the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts) and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim."   Ramirez v. Attorney Gen., 280

F.3d 87, 94 (2d Cir. 2001).

If a petitioner has failed to present her claims to the state's highest court, but no longer has a state forum in which to raise her claims due to a state procedural default,[4] the claims are deemed exhausted.  However, the same procedural default prevents the federal courts from addressing the merits of the claims.  Id.; Bossett, 41 F.3d at 828-29.  Federal courts may only address the merits of a claim that was procedurally defaulted in state court upon a showing of both "cause" for the default and "prejudice" to the petitioner or a showing that failure to consider the claims would result in a fundamental miscarriage of justice.  Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000); Bossett, 41 F.3d at 828-29; see also Coleman, 501 U.S. at 750; Wainwright v. Sykes, 433 U.S. 72, 87 (1977).

Although petitioner's claims for failure to give a justification charge to the jury (claim (6)), improper jury charge as to the elements of the crimes (claim (8)), and excessive witness questioning (claim (9)) appeared on the face of the trial record, petitioner failed to raise them on direct appeal.[5]  (See Resp't Exs.

---

[4] A claim will be considered procedurally barred under state law, for example, where a petitioner is afforded one opportunity to appeal, but fails to take that appeal within the statutorily required period, or fails to raise all of her claims on that appeal.

[5] Petitioner's incompetence to stand trial claim (claim (7)) did not appear on the face of the trial record.  It was therefore properly raised for the first time in petitioner's NYCPL § 440.10 motion, where it was thereafter rejected by the

D & F); see also Charlton, 27 A.D.3d 658-59, 812 N.Y.S.2d at 596-97.

Additionally, petitioner failed to raise these claims in her request

for reconsideration by the New York Court of Appeals and therefore

she could not raise these claims on collateral review by the State

court pursuant to NYCPL § 440.10(2)(c).  Because any future attempt

to raise claims (6), (8), and (9) in state court would be denied on

state procedural grounds, petitioner no longer has a state forum in

which to raise these claims.  This court is prevented from reviewing

these claims due to the same procedural default that bars the State

court's review.  Thus, the court must deem claims (6), (8), and (9)

exhausted.  See Bossett, 41 F.3d at 829.  Because there is nothing

in petitioner's argument or in the record to demonstrate cause for

the default and actual prejudice as a result of the alleged violation

of federal law, or to demonstrate that failure to consider the claims

will result in a fundamental miscarriage of justice, claims (6), (8),

and (9) are dismissed without reaching the merits.

## III.   Independent and Adequate State Law Grounds

Petitioner's claim of prosecutorial misconduct (claim

(1)) is dismissed under the independent and adequate state law

grounds doctrine.  The independent and adequate state law grounds

doctrine provides that a federal court may "not review a question

of federal law decided by a state court if the decision of that court

---

New York Supreme Court and was exhausted after the Second Department denied
petitioner's application for leave to appeal the New York Supreme Court's order.

rests on a state law ground that is independent of the federal question and adequate to support the judgment." <u>Coleman</u>, 501 U.S. at 729. This doctrine may bar federal habeas review when a state judgment rests on independent and adequate state procedural grounds. <u>Id.</u> In rejecting the petitioner's claim of prosecutorial misconduct (claim (1)), the Appellate Division relied on New York's contemporaneous objection rule which bars appellate review of alleged trial errors not properly preserved. NYCPL § 470.05(2).[6] The Appellate Division stated, "defendant's contention that she was deprived of a fair trial because the prosecutor made improper comments during summation is unpreserved for appellate review." <u>Charlton</u>, 27 A.D.3d at 658, 812 N.Y.S.2d at 596. Thus, in denying petitioner's appeal because her claims were not preserved for appellate review, the Appellate Division relied on an independent and adequate state law ground – New York state procedural rule, NYCPL § 470.05(2), – for its decision.[7]

---

[6] NYCPL § 470.05(2) provides, in part: "For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same."

[7] The fact that the Appellate Division found petitioner's prosecutorial misconduct claim to be entirely without merit, in addition to finding it unpreserved, does not preclude the conclusion that its decision rested on an independent and adequate state procedural bar. <u>See, e.g.</u>, <u>Glenn v. Bartlett</u>, 98 F.3d 721, 724–25 (2d Cir. 1996) ("This court has held that 'federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.'" (quoting <u>Velasquez v. Leonardo</u>, 898 F.2d 7, 9 (2d

In cases involving a state court judgment based on a state procedural rule, a federal court may only review the federal habeas claims if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750; see also Sykes, 433 U.S. at 87. Petitioner has failed to offer an explanation for her failure to object to prosecutorial misconduct during summation at trial. To the extent that petitioner claims the failure to object was due to her trial attorney's ineffectiveness, the Appellate Division specifically found that petitioner was not deprived of the effective assistance of trial counsel.[8] Charlton, 27 A.D.3d at 659, 812 N.Y.S.2d at 597. Furthermore, petitioner has not offered any evidence of actual prejudice and the evidence of guilt presented at trial negates a possibility of actual prejudice or a fundamental miscarriage of justice from the prosecution's statements. Sykes, 433 U.S. at 91. Because this narrow exception to the independent state law grounds doctrine does not apply, claim (1) is procedurally barred from federal review. Sykes, 433 U.S. at 86-90; Garcia v. Lewis, 188 F.3d 71, 76 (2d Cir. 1999).

---

Cir. 1990))). The court will nonetheless address claim 1, along with the other claims adjudicated on the merits in state court, in the following sections.

[8] Moreover, in light of the objections made by petitioner's defense counsel to other parts of the prosecution's summation, there is little support for an inference that her counsel was ineffective.

## IV.  The Merits of Petitioner's Remaining Claims

A federal court may only grant habeas relief with respect to a federal claim adjudicated on the merits in state court.  A state court's adjudication of questions of federal law are considered "adjudicated on the merits," regardless of whether the state court only states its conclusion without explaining its reasoning process. Channer v. Brooks, 320 F.3d 188, 195 (2d Cir. 2003).  A state court's adjudication is entitled to deference on collateral review, id. at 195, and a federal court may only grant habeas relief if the state court's adjudication of the federal claim resulted in a decision that was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  A state court decision is an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle from [the] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The Supreme Court has emphasized that the reasonableness of the application of the law is to be assessed objectively rather than subjectively. Id. at 409-10. Therefore, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

Similarly, the question of whether a state court bases a decision on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), is not a question of whether the federal court reviewing the record on a habeas petition agrees with the state court's findings, but only whether they are reasonable. Channer, 320 F.3d at 195.

Pursuant to the foregoing principles, the court's review of petitioner's exhausted claims is limited to determining whether the state court was reasonable in either its application of federal law or its assessment of the facts. Petitioner's remaining claims – claims (2)-(5) and (7) – were adjudicated on the merits by the state court. Claim (1), discussed and disposed of above based on a procedural bar, was also adjudicated on the merits. This court

addresses all of petitioner's claims adjudicated on the merits in state court and holds that all are without merit.

## 1. Claim One: Prosecutorial Misconduct

Petitioner contends that the prosecutor's actions during summation constituted prosecutorial misconduct because the prosecutor "inject[ed] her own personal belief," "vouch[ed] for" her own witnesses, and "withheld . . . material evidence."[9] (Pet. at 7.) In addition to rejecting this claim on state procedural grounds, the Appellate Division also found that this claim was meritless because the statements made by the prosecutor were not improper and, if improper, were mitigated by the court's charge to the jury. Charlton, 27 A.D.3d at 658-59, 812 N.Y.S.2d at 596.

The court must review the state court's decision to determine if it was contrary to federal law or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Pursuant to federal law, the question the court must answer when addressing a claim of prosecutorial misconduct is "whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v.

_____

[9] Petitioner also recites various alleged facts, many of which are not part of the trial record, in an apparent attempt at exoneration, and alludes to an alleged conspiracy between the prosecutor and Police Officer Tewarie, a detective sergeant of police for the Jamaica Constabulary force who approached petitioner at the airport in Jamaica and brought her to the police station in Kingston. (See Pet. at 8-11; Resp't Ex. B: Tr. at 509-514.) The court finds these claims to be entirely unsupported by the record and without merit.

Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks and citation omitted).  The prosecution's comments "must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error."  United States v. Young, 470 U.S. 1, 12 (1985).  "The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is 'th[is] narrow one of due process, and not the broad exercise of supervisory power.'"  Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990) (quoting Darden, 477 U.S. at 181).  A prosecutor's remarks, even if improper and beyond the bounds of fair advocacy, do not warrant a granting of a writ of habeas corpus unless the remarks caused petitioner substantial prejudice.  See Bradley v. Meachum, 918 F.2d 338, 343 (2d Cir. 1990).

In finding this claim without merit, the Appellate Division stated that the prosecutor's "allegedly improper comments were, for the most part, responsive to arguments and issues raised by the defense counsel, fair comment on the evidence, or related to matters which were fairly inferable from the evidence."  Charlton, 27 A.D.3d at 658-59, 812 N.Y.S.2d at 596.  Based on the record before it, the Appellate Division's determination was reasonable.  Furthermore, it was not contrary to Darden to conclude that "[t]o the extent that any remarks were improper, any error was mitigated by the court's charge to the jury, or does not warrant reversal."

<u>Charlton</u>, 27 A.D.3d at 659, 812 N.Y.S.2d at 596 (internal citations omitted).  Because petitioner has not "rebutt[ed] the [state court's] presumption of correctness by clear and convincing evidence," 28 U.S.C. § 2254(e)(1), and there is no evidence of a due process violation or substantial prejudice resulting from prosecutorial misconduct, her petition for habeas on this ground is denied.

### 2. Claim Two: Unlawful Police Conduct: Fourth Amendment Violations

Petitioner next claims that her conviction was tainted by police misconduct by the arresting Jamaican police officers. Because her initial detention was improper, she claims that her statement should not have been introduced at trial.  Petitioner specifically asserts claims of unlawful arrest, fraud, and false imprisonment "through friendship."  (Pet. at 12.)  Petitioner raised these same issues before the trial court, Appellate Division, and in her NYCPL § 440 motion.  (<u>See</u> Resp't Exs. A, D, F, M; <u>see also</u> NYCPL § 440 Mem. & Decision); <u>Charlton</u>, 27 A.D.3d at 659, 812 N.Y.S.2d at 597.

The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was

introduced at his trial."  Stone v. Powell, 428 U.S. 465, 481-82
(1976).

The Second Circuit subsequently developed a test to
discern when a state prisoner has been denied an opportunity for full
and fair litigation of his Fourth Amendment claims.  See Gates v.
Henderson, 568 F.2d 830 (2d Cir. 1977) (en banc), cert. denied, 434
U.S. 1038 (1978).  Because "all that the [Supreme] Court required
was that the state . . . provide[ ] the opportunity to the state
prisoner for full and fair litigation of the Fourth Amendment
claim . . .", id. at 839, the Second Circuit concluded:

> that review of fourth amendment claims in habeas
> petitions would be undertaken in only one of two
> instances: (a) if the state has provided no
> corrective procedures at all to redress the
> alleged fourth amendment violations; or (b) if
> the state has provided a corrective mechanism,
> but the defendant was precluded from using that
> mechanism because of an unconscionable
> breakdown in the underlying process.

Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992) (citing Gates, 568
F.2d at 840).

Petitioner does not contend that New York failed to provide
a corrective procedure to redress her alleged Fourth Amendment claim,
nor can she, because New York has a corrective mechanism to redress
Fourth Amendment claims embodied in NYCPL § 710.10 et seq.[10]   In fact,

---

[10] "Indeed, the 'federal courts have approved New York's procedure for litigating
Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 et seq.

petitioner took advantage of these procedures and obtained a
<u>Dunaway</u>/<u>Mapp</u>/<u>Huntley</u> hearing, after which the trial court denied her
motion to suppress. (Resp't Ex. A.) Petitioner fails to point to
a single fact suggesting that there was an unconscionable breakdown
of the existing process resulting in a violation of her
constitutional rights and the record does not evidence such. (<u>See</u>
<u>generally</u> Pet.; Resp't Ex. A.) Petitioner's factual allegations
regarding the circumstances surrounding her arrest in Jamaica are
not cognizable on federal habeas review where the New York courts
have already clearly provided petitioner with an opportunity to
present her claims fully and fairly. Because petitioner had a full
and fair opportunity to litigate these Fourth Amendment claims in
state court, her petition on this ground must fail. <u>See, e.g.</u>,
<u>Ramdeo v. Phillips</u>, No. 04-CV-1157, 2007 WL 1989469, at *27 (E.D.N.Y.
July 9, 2007) (dismissing habeas petition where petitioner was
granted a <u>Dunaway</u> hearing, at which he was given a full opportunity
to air his Fourth Amendment claims, and simply faulted the decision
reached by the court following that hearing, and failed to show a
lack of state corrective procedures or a breakdown in the underlying
process).

---

(McKinney 1984 & Supp. 1988), as being facially adequate.'" <u>Capellan</u>, 975 F.2d
at 70 n.1 (quoting <u>Holmes v. Scully</u>, 706 F. Supp. 195, 201 (E.D.N.Y. 1989)).

### 3. Claim Three: Failure to Read Back Complainant's Testimony

Petitioner claims that the court erred in not having the testimony of Mr. Lyew read back to the jury per their request. She raised this claim on her direct appeal (Resp't Ex. F: Def.'s Supp. App. Br. at 16-17), and the Appellate Division rejected it for its lack of merit. Charlton, 27 A.D.3d at 659, 812 N.Y.S.2d at 597.

The Appellate Division's decision was a reasonable determination of the facts, as the record reflects that a portion of the Mr. Lyew's testimony was read back. (Resp't Ex. B: Tr. at 679.) This was the specific portion for read-back requested by the jury, after the court asked if they wanted the entire transcript read back. (Id. at 678-679.) When the court twice again asked if the jury wanted the entire transcript read back, the jury said no both times.[11] (Id. at 678-680.) Because the court allowed the testimony to be read back, and any limitations were at the request of the jury, there was no error. Therefore, petitioner's claim is meritless.

### 4. Claim Four: Petitioner's Conviction was Improperly Obtained based on Testimony of Daris Ellis

Petitioner claims that her conviction was improperly obtained based on the testimony of Ms. Daris Ellis, who, petitioner

---

[11]     THE COURT: So you don't want the three hours of testimony read back.
         THE JURY: No.
         THE COURT: I am happy to do it.
         THE JURY: No.
         THE COURT: Okay, it is up to you.
(Resp't Ex. B: Tr. at 679.)

claims, testified on behalf of the prosecution in exchange for favorable treatment in her own pending assault charges. (Pet. at 25.) Petitioner claims that an interested witness charge should have been read to the jury. (Id.) On direct appeal, the Appellate Division held that this claim was without merit. Charlton, 27 A.D.3d at 658, 812 N.Y.S.2d at 597; (see also Resp't Ex. F.) In its denial of petitioner's NYCPL § 440 motion, the New York Supreme Court noted that "no deal was made in exchange for [the witness's] cooperation" and that "nothing was ever promised to the witness" in exchange for her testimony. (NYCPL § 440 Mem. & Decision at 4.)

"A jury charge in a state trial is normally a matter of state law and is not reviewable on federal habeas corpus absent a showing that the alleged errors were so serious as to deprive defendant of a federal constitutional right." United States ex rel. Smith v. Montanye, 505 F.2d 1355, 1359 (2d Cir. 1974). See also Kettreis v. Connell, No. 06-CV-5032, 2007 WL 2693678, at *1 (E.D.N.Y. Sept. 12, 2007) ("A federal court can only grant habeas relief on a defective jury charge if it 'so infected the entire trial that the resulting conviction violates due process.'" (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973))). "'[T]he habeas court must consider the whole jury charge in the context of all the charges given and the events at trial.'" Cook v. Pearlman, 212 F. Supp. 2d 258, 265 (S.D.N.Y. 2002) (quoting McCaskell v. Keane, No. 97-CV-2999, 2001

WL 840331, at *10 (S.D.N.Y. July 26, 2001) (citing <u>Vargas v. Keane</u>,
86 F.3d 1273, 1277 (2d Cir. 1996))).

Here, Ms. Ellis's testimony served to corroborate the
victim's account of the assault; at no time did Ms. Ellis identify
the woman she observed as the petitioner.[12] (Resp't Ex. B: Tr. at
633, 644.) Ms. Ellis also testified that she had three pending
criminal actions in state court, that the Assistant District Attorney
prosecuting her open cases would be notified of her cooperation in
this case, that the District Attorney's office supplied her with
clothing to appear in court, and that she was given lunch at the
District Attorney's office the day of her testimony. (<u>Id.</u> at 361-67;
387-95.)

At the charging conference, the trial court concluded that
Ms. Ellis's testimony did not warrant a special interested witness
charge. Instead, the trial court determined a general charge on
witness credibility would suffice. (Resp't Ex. B: Tr at 526-27.)
Accordingly, the trial court instructed the jury to "evaluate the
testimony of all the witnesses to determine their credibility and
the weight that . . . should be given to their testimony." (<u>Id.</u> at
661.) The trial court then specifically instructed the jury that,

---

[12] Ms. Ellis's testimony reveals that she witnessed a woman standing next to a red
car with her hands inside the driver's side window. (Resp't Ex. B: Tr. at 372-76.)
She then watched the woman get into a black car and drive away. (<u>Id.</u> at 375-76.)
When she realized that there was someone hurt in the red car she assisted him out
of the car and helped him to a fire station nearby. (<u>Id.</u> at 377-78.)

while assessing the credibility of each witness, the jurors could consider, among other things, "the apparent interest or lack of interest of a witness in a case." (Id.)

Here, the lack of a more specific interested witness charge did not deprive petitioner of a federal constitutional right. First, the record reflects that Ms. Ellis clearly disclosed her potential interests in testifying to the jury during both direct examination and on cross examination. (See, e.g., id. at 366-67 ("Q: And, in fact, was the agreement that the information that you testified here at trial will be passed along to whoever is handling your open cases; is that the only agreement, to your knowledge, that was made? A: Yes."); id. at 387 ("Q: Now, the district attorney asked you on direct examination if you have some kind of deal with them, correct? A: Yes. Q: And the testimony was that whatever cooperation or information you give in this case will be passed on to a prosecutor on your three current cases? A: Yes.").)

Furthermore, on cross-examination, the trial court provided defense counsel ample latitude to call Ms. Ellis's motive for testifying into question. (See, e.g., id. at 388-89 ("In fact, Ms. Ellis, without any cooperation agreement with the district attorney, you stand to spend life in jail, don't you?".) Petitioner was thus provided with the opportunity to attack Ms. Ellis's credibility and to bring to the jury's attention the fact that she

could be a biased witness. Considering that Ms. Ellis never identified the petitioner, and given the whole jury charge in the context of all the events at trial, the lack of a more specific interested witness charge did not result in a federal constitutional violation. Thus, petitioner's claim on this ground is without merit and is denied. See, e.g., Kettreis, 2007 WL 2693678, at *1-2 (denying habeas relief on failure to give interested witness charge grounds where trial court instructed the jury to consider the interest or bias of a witness and where witness's cooperation agreement and motivation were the subject of both argument and evidence throughout the trial); Cook, 212 F. Supp. 2d at 264-66 (denying habeas relief on failure to give interested witness charge grounds where the jury was instructed to consider the reasons or motives that would cause the witnesses to lie, and the trial court permitted the defendant ample latitude on cross-examination and in summation to call into question each witness's motive for testifying); McCaskell, 2001 WL 840331, at *9-11 (denying habeas relief on failure to give interested witness charge grounds where trial court instructed the jury to consider the interest or motive for testifying and where witnesses' motive for testifying was explored on cross-examination and argued in summation).

### 5. Claim Five: Denial of Effective Assistance of Counsel

Petitioner asserts that she was denied the effective

27

assistance of counsel at trial because her counsel failed to make
various motions and objections.  (Pet. at 3, 27-28.)  Petitioner
raised this argument before the New York Appellate Division, which
held that petitioner "was not deprived of the effective assistance
of counsel" because petitioner had "failed to demonstrate the absence
of strategic or other legitimate explanations for her counsel's
alleged failures in representation."  Charlton, 27 A.D.3d at 659,
812 N.Y.S.2d at 597.  Petitioner also raised this argument in her
NYCPL § 440 motion, which held that "none of defendant's assertions
rise to the level of ineffective assistance of counsel since she has
not shown that 'counsel's representation fell below an objective
standard of reasonableness'" and noted that "[d]efense counsel was
prepared for trial, made appropriate objections and effectively
cross-examined witnesses."  (NYCPL § 440 Mem. & Decision at 5-6
(quoting Strickland v. Washington, 466 U.S. 668, 688 (1984).)

        In analyzing petitioner's ineffective assistance of
counsel claim, the court must determine whether the state court's
determination of this claim was contrary to, or an unreasonable
application of, the ineffective assistance standard set forth in
Strickland v. Washington, 466 U.S. 668 (1984).  See Williams, 529
U.S. at 390-91.  Under Strickland, the appropriate inquiry is
whether petitioner had "reasonably effective assistance" of counsel,
such that counsel's actions neither: (1) fell below an objective

standard of reasonableness; nor (2) caused a reasonable probability that the result of the trial would have been different but for counsel's unprofessional errors. Strickland, 466 U.S. at 686-95.

In applying this standard, a court must "indulge a strong presumption that Counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. A "reasonable probability" is defined as one which undermines confidence in the outcome of the trial. Bunkley v. Meachum, 68 F.3d 1518, 1521 (2d Cir. 1995). "The benchmark . . . must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)); see also United States v. Helgesen, 669 F.2d 69, 72 (2d Cir. 1982), cert. denied, 456 U.S. 929 (1982) ("[T]rial advocacy is an art, and the advocate must be given some latitude in deciding upon an appropriate trial strategy."); Anwar v. United States, 648 F. Supp. 820, 829 (N.D.N.Y. 1986), aff'd, 823 F.2d 544 (2d Cir. 1987). Further, counsel's action must be viewed as of the time of the trial. Strickland, 466 U.S. at 690. Even objectively unreasonable errors on the part of counsel will not result in the

setting aside of a judgment in a criminal proceeding if the errors can be shown to have had no effect on the judgment.  See id. at 691.

The court finds that the state court's rejection of this claim was neither contrary to, nor an unreasonable application of, the Strickland standard.  As a review of the record indicates, counsel for petitioner presented a cogent theory of defense through his opening and closing statements, as well as through his vigorous cross-examination of many of the prosecution's witnesses, including, inter alia, the victim, Mr. Lyew.  Furthermore, defense counsel made a pre-trial suppression motion and lodged objections, some successful, others not, throughout trial and at the charge conference.  The record as a whole simply fails to demonstrate that petitioner's counsel was deficient in providing representation.  It was not unreasonable, as petitioner suggests, for her trial counsel to have strategically decided at times not to make the motions or objections that petitioner suggested.  (See Pet. at 27.) Furthermore, petitioner has not shown that there is a reasonable probability that, but for counsel's alleged errors, the outcome of the trial would have been different.  Petitioner's claim for ineffective assistance of trial counsel thus fails.

### 6. Claim Seven: Denial of Due Process due to Incompetence & Failure to Order Pre-Sentence Report

Petitioner claims that her right of due process was violated because she was incompetent to stand trial and because a

pre-sentence report was not ordered.  (Pet. at 18-19.)

It is true that "the constitutional right to due process is violated when a person who is incompetent is convicted of a crime, whether the conviction follows a trial or a plea of guilty."  Harris v. Kuhlmann, 346 F.3d 330, 349 (2d Cir. 2003) (citing Cooper v. Oklahoma, 517 U.S. 348, 354 (1996); Drope v. Missouri, 420 U.S. 162, 171-73 (1975)).  However, a petitioner is not entitled to habeas relief unless the state court applied the "clearly established Federal law, as determined by the Supreme Court" to the facts of the petitioner's case in an "objectively unreasonable manner."  28 U.S.C. § 2254(d)(1).

A "[s]tate may presume that the defendant is competent and require him to shoulder the burden of proving his incompetence by a preponderance of the evidence."  Cooper v. Oklahoma, 517 U.S. 348, 355 (1996).  Title 18 U.S.C. section 4241(a) requires the district court to order a hearing sua sponte to determine the mental competence of a defendant only "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  18 U.S.C. § 4241(a).  Thus, pursuant to federal law, "the failure to conduct a full competency hearing is not ground for reversal when the

31

defendant appears competent during trial." Rollins v. Leonardo, 733
F. Supp. 763, 768 (S.D.N.Y. 1990) (citing United States v. Vamos,
797 F.2d 1146, 1150 (2d Cir. 1986), cert. denied, 479 U.S. 1036
(1987)).

A defendant's competence is assessed at the time of trial,
Rollins, 733 F. Supp. at 769, and is determined by the defendant's
"ability to consult with h[er] lawyer with a reasonable degree of
rational understanding and a rational as well as factual
understanding of the proceeding against h[er]." Cooper, 517 U.S.
at 354. There are "no fixed or immutable signs which invariably
indicate the need for further inquiry to determine fitness to
proceed." Drope, 420 U.S. at 180; see also United States v.
Arenburg, 605 F.3d 164, 169 (2d Cir. 2010) (A "district court may
consider 'many factors' when determining whether 'reasonable cause'
to order a competency hearing exists, including (but not limited to)
its 'observations of the defendant's demeanor during the
proceeding.'" (quoting United States v. Quintieri, 306 F.3d 1217,
1233 (2d Cir. 2002))). Ultimately, the "inquiry is whether, 'in
light of what was then known [to the trial court], the failure to
make further inquiry into petitioner's competence to stand trial[ ]
denied him a fair trial.'" Nicks, 955 F.2d at 169 (citing Drope,
420 U.S. at 174-75);

In any event, when a court inquires, on habeas review, into

whether the petitioner was denied a fair trial, "we must presume the state court's findings of fact are correct, unless the petitioner meets the 'burden of rebutting th[is] presumption of correctness by clear and convincing evidence.'" LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002) (quoting 28 U.S.C. § 2254(e)(1) and citing Brown v. Artuz, 283 F.3d 492, 498 (2d Cir. 2002)).

Petitioner was initially found unfit to proceed to trial. However, on August 21, 2003, approximately six months before the trial began, petitioner was explicitly found competent and fit to proceed to trial pursuant to CPLR Article 730, following a psychiatric evaluation by Dr. Richard Wang. (See Resp't Ex. N: Resp't Opp. to Def.'s NYCPL § 440 Mot., Ex. A (finding that petitioner "has a factual and rational understanding of the proceedings against her, and can engage in cooperative working relationships with a reasonable degree of rational understanding if so motivated").) Furthermore, there is nothing in the record to indicate that the trial judge had doubts as to petitioner's competence throughout the trial and the record is void of evidence that petitioner was unfit to proceed at any point during the proceedings. Moreover, petitioner's counsel never raised the issue of petitioner's competence. See, e.g., United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995) ("A failure by trial counsel to indicate that the defendant had any difficulty assisting in preparation or in comprehending the nature

33

of the proceedings provides substantial evidence of the defendant's competence.") (internal quotation marks and citations omitted). Indeed, petitioner's claim that she was incompetent to stand trial directly contradicts her claim that she was denied effective assistance of counsel insofar as she claims that she directed her trial attorney to "contest and challenge [certain] factual evidence". (Pet. at 27.)

Petitioner does not provide any medical reports or affidavits evidencing that she was unfit to proceed to trial. She only asserts that her examining doctor who ordered her fit to proceed was biased against her and conspiring with the prosecutor's office. (Pet. at 18-19.) These assertions are meritless and, regardless, have no bearing on whether she was, in fact, fit to proceed. Because the trial court reasonably found her fit to proceed, this claim is denied.

Petitioner's claim that a pre-sentence investigation and report were not ordered is also meritless. On March 9, 2004, a pre-sentence investigation and report were ordered and a report was subsequently prepared. (Resp't Exs. B, C, N; see also NYCPL § 440 Mem. & Decision at 6 ("Defendant is mistaken in her claim that no pre-sentence report was ordered by the court." (citing People's Ex. B)).) Petitioner was sentenced to seventeen years of imprisonment, which is consistent with the recommended range. As a result,

petitioner's claim on this ground is denied.

## CONCLUSION

Based on the foregoing, the court denies petitioner's application for a writ of habeas corpus. Because petitioner has not made a substantial showing of the denial of any constitutional right, the court will not issue a certificate of appealability. 28 U.S.C. § 2253; Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997), abrogated on other grounds, United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate of appealability). The court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this judgment denying the petition would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962). The Clerk of the Court is respectfully requested to serve a copy of this Memorandum and Order upon petitioner and to close the case.


**SO ORDERED**
Dated:     June 25, 2010
           Brooklyn, New York

                                    /s/
                         KIYO A. MATSUMOTO
                         United States District Judge
                         Eastern District of New York